*275 OPINION OF THE COURT
Toko Serita, J.
Introduction
During a five-month span, from September 1997 through January 1998, defendant G.M.[1] was arrested on six separate occasions, twice each for prostitution, criminal trespass and drug possession. As a result of the guilty pleas taken in each of these cases, she was ultimately convicted of two violations and four class B misdemeanors. The defendant now moves to vacate these convictions pursuant to Criminal Procedure Law § 440.10 on the grounds that, among other things, she was a trafficking victim at the time these offenses occurred. On April 1, 2011, this court issued an oral ruling granting the defendant’s motion to vacate the convictions and dismissing the accusatory instruments, indicating that a written decision would follow.
Factual Background
In 1989, the defendant, a native of the Dominican Republic, met D.S.[2] while on a tourist visa to the United States. The defendant decided to stay in the United States with D.S., in part, to earn money for her two children who were still living in the Dominican Republic. In 1994, the couple married. Soon thereafter, the relationship took a turn for the worse as D.S. began to physically abuse the defendant, something which had never happened before the marriage. As a result of this abuse, the defendant returned to the Dominican Republic later that year.
In early 1996, D.S. went to the Dominican Republic and begged the defendant to move back with him to New York, promising to find her a good job and to help her with her immigration status. She decided to do so “in the hope that it would improve my life and the lives of my children” (affidavit of G.M. at 2). Upon her return to New York, the defendant discovered that her husband was addicted to crack cocaine. The abuse resumed, and was often more severe when he was under the influence of drugs.
The continued violence at times resulted in visits to the hospital and left the defendant scarred and disfigured. D.S. also raped her when he was high on crack cocaine and imprisoned *276 her against her will, sometimes for an entire weekend. He succeeded in completely isolating her from others and exerted control over almost every aspect of her life, taking all the income she earned working at- various jobs. He exercised complete control over her, physically and psychologically, such that her “every move was tracked by [D.S.]” and she was not “allowed” to leave the room or apartment without him (id. at 3). He would often drop her off and pick her up from her jobs, waiting in a car parked outside to make sure she did not go somewhere else.
It was during this period of abuse that the defendant was arrested on six separate occasions. From September 1997 through January 1998, defendant was arrested twice for prostitution (Penal Law § 230.00), twice for criminal trespass in the third degree (Penal Law § 140.10), and twice for criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), all misdemeanor offenses. The defendant pleaded guilty on each of these cases, often at arraignments, resulting in two noncriminal convictions for disorderly conduct, a violation, and four class B misdemeanor convictions.
According to the defendant’s affidavit, D.S. forced her to engage in these illegal activities, including prostitution, upon threat of physical harm or actual violence if she did not comply. She was also forced to purchase crack cocaine for her husband because D.S. feared getting arrested himself. If she refused to comply with any of his demands, he would threaten to kill her or harm her children in the Dominican Republic. D.S. would drive the defendant to brothels and wait inside his car while he made her do his bidding. If she did not earn enough money for him, he would become angry and violent. The defendant was never allowed to keep any of the money she earned. “[D.S.] would pay for my food, clothes, and everything else. He would not give me money for my own necessities” (affidavit of G.M. at 9).
In 2003, the defendant tried unsuccessfully to leave her abusive husband. That year, she escaped from him and returned to the Dominican Republic to be with her children, whom she had not seen in over eight years. He ultimately tracked her down and forced her to return by issuing threats to harm a close family friend. When she returned to New York City, she found that “nothing had changed. I just went back to the nightmare I was living. The beatings were even worse because [D.S.] was angry that I went to the Dominican Republic” (id.). The defendant’s ordeal ended in January 2005, when D.S. left *277 one day and never returned. To date, the defendant does not know where he is and he has not attempted to contact her. The defendant eventually sought assistance from outside organizations to help her put her life back together, and in 2009, she received a “T Visa” (T-l Nonimmigrant Classification Status), after proving to the federal government that she was a victim of human trafficking.[3]
Yet, despite the defendant’s status as a trafficking victim, her criminal record has created a severe hardship for her. For example, her job as a home health care attendant, which she held for approximately five years, was jeopardized when the Department of Health (DOH) did a background check on her and discovered her criminal convictions. As a result of this discovery, the defendant was first put on suspension by DOH in 2007 and then terminated. With the assistance of the Sex Workers Project of the Urban Justice Center, she was approved to work again after successfully contesting DOH’s decision. This process, however, took almost three years. The defendant now makes this application to clear her criminal record in part, because she will be otherwise vulnerable to having her background exposed to future employers, creating further embarrassment, humiliation and financial hardship.
The original basis for the defendant’s CPL article 440 motion, filed on June 3, 2010, was that the defendant, a non-English-speaking Dominican woman, took these pleas without the effective assistance of counsel, and that these pleas were neither knowing nor voluntary. During the pendency of this litigation, however, the New York State Legislature amended Criminal Procedure Law § 440.10, allowing the New York courts, for the *278 first time, to vacate the convictions of those arrested for prostitution-related offenses if they were sex trafficking victims at the time of the arrest (see CPL 440.10 [1] [i]). After the passage of that amendment, in a supplemental motion dated August 24, 2010, the defendant moved this court to consider these new provisions as additional grounds for granting the article 440 motion.
On December 17, 2010, the Queens County District Attorney’s Office, represented by Assistant District Attorney Kimberly Affronti, the Deputy Bureau Chief of the Criminal Court, issued an oral response to the defendant’s application in which it stated:
“Your Honor, you know the People have spent a great deal of time reviewing all of the facts of this case. While every 440.10 motion is viewed on its own merit, this case was an exceptional case and the merits of the case were based totally on the People’s reliance on the defendant’s truthfulness of what she disclosed in the affidavit on May 13th as well as her interview on November 22d . . . The People are exercising discretion in this particular case, the People are not looking to expand the statute. This defendant was convicted of four crimes and two violations, only two of the crimes are covered by [this statute]. It is the People’s position that based on our reliance on the defendant’s truthfulness, the right thing to do is to consent to the defendant’s motion. Again, the People are stressing that we are not looking to expand the statute, this is not a case to refer to in future 440 motions. This case in no way sets a precedent for how the People will view other cases, nor do the People expect this decision to effect the defendant’s cases in any other county. Having said all of that your Honor, the People do consent to defense’s 440.10 motion.” (CPL article 440 proceedings, dated Dec. 17, 2010, at 3-4.)
. In a ruling from the bench on April 1, 2011, this court granted the defendant’s article 440 motion by vacating the judgment of conviction in each of the defendant’s six cases and dismissed all of the accusatoiy instruments.[4]
*279 Legal Discussion
In August 2010, the New York State Legislature amended Criminal Procedure Law § 440.10 to allow sex trafficking victims to vacate their convictions for prostitution-related offenses (see CPL 440.10 [1] [i]). Specifically, this new legislation allows for the vacatur of convictions where the underlying charge was for prostitution (Penal Law § 230.00) or loitering for the purpose of engaging in a prostitution offense (Penal Law § 240.37) and the defendant’s arrest on that charge “was a result of having been a victim of sex trafficking under section 230.34 of the penal law or trafficking in persons under the Trafficking Victims Protection Act (United States Code, title 22, chapter 78).” (CPL 440.10 [1] [i].)
The passage of this new law was based upon a recognition that
“[v]ictims of sex trafficking who are forced into prostitution are frequently arrested for prostitution-related offenses and are saddled with the criminal record. They are blocked from decent jobs and other prospects for rebuilding their lives. Even after they escape from sex trafficking, the criminal record victimizes them for life” (Sponsor’s Mem, Bill Jacket, L 2010, ch 332).
Thus, this legislation “would give victims of human trafficking a desperately needed second chance they deserve” (id).
Criminal Procedure Law § 440.10 (1) (i) applies to victims of sex trafficking under both state and federal law. It does so by specifically incorporating the state and federal crimes of sex trafficking into the statute itself. Under the Trafficking Victims Protection Act of 2000, sex trafficking is defined as “the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act” (22 USC § 7102 [9]). The TVPA defines a “victim of a severe form of trafficking” (22 USC § 7102 [13]) as one who is subjected to “a commercial sex act [that] is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age” (22 USC § 7102 [8] [A]).* *[5]
New York law, in contrast, does not include a definition of what constitutes a sex trafficking victim under the Penal Law. *280 Instead, CPL 440.10 (1) (i) refers specifically to New York’s sex trafficking statute (Penal Law § 230.34), which was enacted in 2007. Under this statute, a class B felony, a person is guilty of sex trafficking if he or she “intentionally advances or profits from prostitution” by engaging in any one of several types of conduct, such as taking or keeping an individual’s passport or immigration documents to induce a victim to become involved in or to remain in prostitution (Penal Law § 230.34 [3]), or by using different methods of force or coercion to instill a fear in the trafficked victim to compel her to engage in or continue to engage in prostitution (Penal Law § 230.34 [5] [a]-[h]).* ****[6]
With respect to the case at bar, a federal agency has already recognized the defendant as a victim of human trafficking. While “official documentation of the defendant’s status” from a federal agency is not required for granting a motion to vacate under CPL 440.10 (1) (i), it nevertheless “create[s] a presumption that the defendant’s participation in the offense was a result of having been a victim of sex trafficking or trafficking in persons” (CPL 440.10 [1] [i], [ii]).
Moreover, the defendant has provided a very compelling narrative of the circumstances surrounding all of her arrests, demonstrating that they were the product of years of brutal physical, psychological and sexual violence by her husband, which resulted in having been trafficked by him. While the defendant has moved to vacate all six convictions based on the provisions of the new amendment, and even though only two are prostitution offenses technically covered by the scope of CPL 440.10 (1) (i), this issue need not be addressed in the instant case because the People have consented to thé defendant’s motion in its entirety.[7] Based upon the unique circumstances presented here, this court concurs with the People’s position that all of the de *281 fendant’s convictions are entitled to the relief requested. Thus, under the provisions of the new amendment, this court “must vacate the judgment and dismiss the accusatory instrument.” (CPL 440.10 [6].)
For the foregoing reasons, the defendant’s application to vacate the judgments of conviction on all six cases is granted and the accusatory instruments in these matters are dismissed.

. This decision has been edited for publication. Since the cases have been dismissed, the names of the defendant and her husband have been modified to protect her identity.

. See footnote 1.

. In order to be eligible, the primary applicant for such a visa must meet the definition of “severe forms of trafficking in persons.” (8 CFR 214.11 [a].) Under the Trafficking Victims Protection Act of 2000 (TVPA), as well as the subsequent Trafficking Victims Protection Reauthorization Acts of 2003, 2005 and 2008, “severe forms of trafficking in persons” is defined as the following: (1) sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age; or (2) the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery. (See Trafficking Victims Protection Act of 2000, 22 USC § 7102 [8], as added by Pub L 106-386, div A, § 103, 114 US Stat 1464, 1469; Trafficking Victims Protection Reauthorization Act of 2003, Pub L 108-193, 117 US Stat 2875; Trafficking Victims Protection Reauthorization Act of 2005, Pub L 109-164, 119 US Stat 3558]; and William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub L 110-457, 122 US Stat 5044.)

. In a final supplemental affidavit submitted on March 2, 2011, defendant’s attorney, Melissa S. Broudo of the Urban Justice Center, Sex Workers *279 Project, clarified that the remedy sought by the defendant was the vacatur and dismissal of all six criminal convictions.

. “[Trafficking in persons under the [TVPA],” mentioned in CPL 440.10 (1) (i), refers specifically to the definition of “severe forms of trafficking in persons” found in the federal statute. The first definition is sex trafficking *280 through force, fraud or coercion or where the victim is under the age of 18 (22 USC § 7102 [8] [A]); the second definition of “severe forms of trafficking in persons” is “the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery” (22 USC § 7102 [8] [B]).

. Other examples include: impairing a person’s judgment by providing drugs to that individual (Penal Law § 230.34 [1]), or making false or misleading statements to induce a victim to become involved in, or to remain in prostitution (Penal Law § 230.34 [2]), or keeping a person in debt bondage (Penal Law § 230.34 [4]).

. While the People have clearly stated that by doing so, they are not seeking to “expand” the (CPL article 440) statute, a valid issue remains as to whether the statute can be applied to nonprostitution offenses where the de *281 fendant was a demonstrated sex trafficking victim during their commission. It should be noted that CPL 440.10 (6) allows the court to “take such additional action as is appropriate in the circumstances.”