OPINION OF THE COURT
Lynn R. Kotler, J.
Under a recent amendment to CPL article 440, the defendant moves to vacate 87 convictions she accrued over the course of three years which stem from acts of prostitution or are otherwise related thereto (CPL 440.10 [1] [i]). She now claims that she is the victim of sex trafficking. The People oppose the motion in its entirety.
The motions are hereby consolidated for the court’s consideration and decision in this single decision/order.
On May 11, 2011, the court held a testimonial hearing on the motion. The defendant testified on her own behalf at the hearing. Although her native language is Portuguese, the defendant waived her right to an interpreter, because she felt comfortable conversing in English. No other witnesses were called.
Findings of Fact
The defendant is a Brazilian citizen. In or about 1986, she entered the United States on a tourist visa. At that time, she resided with her mother at 140 Broad Street, New York, New York. She overstayed her visa, and began working in the United States. In or about 1992, the defendant claims she had obtained work authorization and a Social Security card. This work authorization allegedly entitled her to work in the United States for a one-year period. The defendant claims that her immigration documents were based upon “lies.” As an example of these lies, the defendant said that her employment history listed Tavern on the Green as an employer; however, she claims that she never worked at Tavern on the Green. The defendant states that she was terrified about her immigration status in the United States because of the fraudulent immigration documents.
In or about 1992, the defendant was working in a diner in the Bronx, and was living with her mother at 166th and Park in the Bronx. While working at the diner, she became acquainted with a woman named Marisol, a customer. Marisol would come to the diner approximately two times a week for about a year. At some point during that time, Marisol told the defendant that she could help her with her immigration issues. The defendant *833 thereafter met with Marisol a few times, in several different apartments. The defendant testified that she didn’t know where these apartments were in part because she wasn’t familiar with the area of the Bronx that these apartments were located in. Eventually, the defendant trusted her immigration documents, including her passport, work authorization and Social Security card, to Marisol. The defendant claims that Marisol was going to help her get a “green card” and obtain permanent resident status in the United States.
Instead, Marisol blackmailed her; she demanded payment for her assistance. The defendant indicated that she did not have enough money to meet Marisol’s demands. At that point, Marisol told the defendant that she would have to “sleep with men in the street” in order to get her immigration documents back. Although the defendant initially refused to do such work, she felt she had no choice but to do what Marisol said. At the time, the defendant did not speak English and was scared about what might happen if she didn’t comply with Marisol’s demands.
Over the course of the next 2xh years, the defendant was convicted 86 times for either prostitution (Penal Law § 230.00) or loitering for the purpose of engaging in a prostitution offense (Penal Law § 240.37). She was also arrested for prostitution offenses outside New York’s jurisdiction (New Jersey and Boston) during this time period. The defendant stated that she never used illegal drugs, but did smoke tobacco cigarettes and occasionally drank alcohol.
The defendant described her life working as a prostitute in some detail. She was moved around a lot. Her captors drove her to locations where she was watched and otherwise directed to work. She gave all the money that she received for her services to her captors. She described the first man that forced her to work as her “pimp.” His name was Chino. After about six or seven months (approximately July-August 1993), Chino was replaced by Anthony Gordon. Anthony Gordon continued as her pimp until sometime before June 1995. When asked about the sheer volume of the arrests/convictions she incurred over the course of 2V2 years, the defendant explained that sometimes she would just go up to police officers and ask them to take her in. She stated that it seemed like a good idea at the time — that being in jail was preferable to working on the street.
After her last arrest in June 1995, the defendant managed to get her immigration documents back from Marisol’s associates. She then moved in with her aunt. Her mother was in New *834 Jersey by that time. The defendant did not report her captivity to the authorities, and did not tell any friends or family members about it.
Now, the defendant works as a house cleaner. She lives with her mother, who she takes care of. Her mother is a United States citizen, so the defendant applied as her daughter for an adjustment of status here in the United States. The status of the defendant’s current immigration application is unclear to the court, but it is apparent that the instant convictions are an obstacle to her proposed adjustment of status.
Conclusions of Law
CPL 440.10 (1) (i), which became effective August 13, 2010, allows a defendant victim of sex trafficking to bring a motion to vacate a conviction and dismiss an accusatory instrument where the arresting charge was loitering for the purpose of engaging in a prostitution offense (Penal Law § 240.37) or prostitution (Penal Law § 230.00). In order to prevail on this motion, the defendant must show that her “participation in the offense [s] was a result of having been a victim of sex trafficking under section 230.34 of the penal law or trafficking in persons under the Trafficking Victims Protection Act ([22 USC § 7101 et seq.])” (CPL 440.10 [1] [i]).
The defendant must make such motion
“with due diligence, after the defendant has ceased to be a victim of such trafficking or has sought services for victims of such trafficking, subject to reasonable concerns for the safety of the defendant, family members of the defendant, or other victims of such trafficking that may be jeopardized by the bringing of such motion, or for other reasons consistent with the purpose of this paragraph” (CPL 440.10 [1] [i] [i]).
Official documentation from a governmental body of the defendant’s status as a victim of sex trafficking creates a presumption in the defendant’s favor that his/her “participation in the offense was a result of having been a victim of sex trafficking or trafficking in persons,” but is not required (CPL 440.10 [1] [i] [ii]).
Under Penal Law § 230.34 (3), a person is guilty of sex trafficking if he or she “intentionally advances or profits from prostitution” by “withholding, destroying, or confiscating any actual or purported passport, immigration document, or any other actual or purported government identification document *835 of another person with intent to impair said person’s freedom of movement.”
Under the Trafficking Victims Protection Act (TVPA), sex trafficking is defined as “the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act” (22 USC § 7102 [9]). Under the TVPA, a victim of sex trafficking is defined as a person who engaged in “a commercial sex act [that] is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age” (22 USC § 7102 [8] [A]; [13]).
At the outset, the defendant’s request for relief as to docket number 94N007114 must be denied. The underlying offense, resisting arrest (Penal Law § 205.30), is not a prostitution-related offense, and the defendant’s attorney voluntarily withdrew this request for relief. Accordingly, the defendant’s motion is denied as to this docket only.
Otherwise, the court is convinced that the defendant has demonstrated that her participation in each of the prostitution and/or prostitution-related offenses was as a result of her being a victim of sex trafficking. The court finds that the defendant was credible. She testified as to what she could remember, gave answers that appeared to be truthful, and admitted to acts that caused her to cry and be embarrassed. She has described in significant detail the events that led her to prostitute herself, as well as the people who acted as her captors and withheld her immigration documents. At the time, the defendant’s familiarity with United States law was minimal at best, her command of English was nonexistent, and she was scared about her immigration status and did not want to be deported from the United States.
The defendant’s testimony that she would ask the police to arrest her just so she could get off the street and not have to have sex with anyone those nights explains the very high number of convictions in such a short period. It is remarkable that since 1995, the defendant has not had another contact with the criminal justice system. Overall, the defendant’s story was consistent with the generally accepted notion that victims of human trafficking are often too wary of authorities or too traumatized by their experiences to be able or willing to timely report their victimization (see Jill Laurie Goodman, Lawyer’s Manual on Human Trafficking, ch 1 et seg. [Jill Laurie Goodman & Dorchen A. Leidholdt eds., 1st ed 2011]).
The bulk of the People’s opposition to the defendant’s motion is that she is unable to corroborate her story. However, the *836 court does not find this argument persuasive. It is not atypical for pimps and captors to not use full names, or any names at all. Moreover, the defendant did not speak English during the relevant times, was not familiar with New York City, and did not have a substantial support network upon which to rely, having just moved to the United States only a few years prior to the commencement of her captivity.
The People warn that granting this motion will “open the flood gates” of prior prostitution convictions insofar as those defendants can just come into court and claim that they were the victims of sex trafficking without any further corroboration and have their convictions vacated. The court finds this argument to be dogmatic and unpersuasive. CPL 440.10 gives a court the discretion to weigh the credibility of a defendant and make its determinations based thereupon. The floodgates will not open by granting this defendant the relief she seeks.
By granting this defendant’s motion, the court has not merely rubber stamped the defendant’s application, but rather granted the relief requested after a thorough testimonial hearing where the defendant established that she was credible. Further, even if the floodgates open by granting this motion, the courts can easily deny frivolous motions under this new provision of CPL article 440. The defendant’s ability to continue putting her life back together after the horrendous ordeal that she experienced from 1993-1995 heavily outweighs any increased motion practice that may result hereafter.
Furthermore, the legislature did not require any specific corroborating facts or other evidence which would support a defendant’s application pursuant to CPL 440.10 (1) (i). By avoiding bright-line rules and formulaic determinations, the legislature squarely gave the courts the discretion to grant relief pursuant to CPL 440.10 (1) (i) when a defendant could show by a preponderance of the evidence that he or she was a sex trafficking victim. Moreover, CPL 440.10 (1) (i) (ii) provides that the absence of a finding by a governmental organization that a defendant is a victim of sex trafficking is not a bar to relief thereunder.
Accordingly, the defendant’s motion to vacate each of her remaining convictions is hereby granted.
Conclusion
In accordance herewith, it is hereby ordered that the defendant’s motion to vacate her conviction with respect to docket *837 94N007114 is denied; and it is further ordered that the defendant’s motion to vacate her remaining convictions is granted and each of the accusatory instruments with respect to dockets 93N022568, 93N023779, 93N025469, 93N027349, 93N029719, 93N030314, 93N031081, 93N032469, 93N036038, 93N036921, 93N037344, 93N039670, 93N041917, 93N043925, 93N047283, 93N047732, 93N048014, 93N049302, 93N049948, 93N050389, 93N051596, 93N052531, 93N054307, 93N054982, 94C006149, 94N034868, 94C006548, 94C007613, 94C007856, 94C007998, 94C008395, 94C008826, 94C009275, 94N053759, 94N057838, 94C011050, 94C011962, 94N075513, 94C012866, 94N001806, 94N002384, 94N002719, 94N004562, 94N005119, 94C001225, 94C001596, 94N010141, 94N010256, 94C001942, 94C002211, 94C002266, 94C002501, 94N017486, 94N017898, 94C002980, 94C003284, 94C003494, 94C004056, 94C004483, 94N027430, 94C005159, 94C006053, 94N082519, 94C014111, 94C014210, 94C014730, 94N093236, 94C016371, 94C017232, 94C017357, 95C002278, 95C000314, 95C000654, 95C001047, 95C001161, 95N005954, 95N016723, 95N019468, 95C002789, 95N014127, 95C004691, 95N024074, 95N026419, 95C009076, 95C009293, and 95N047829 are hereby dismissed.
Any requests for relief not expressly addressed herein have nonetheless been considered and are hereby denied.