OPINION OF THE COURT
Megan Tallmer, J.
This opinion elaborates upon an oral decision granting defendant’s motion to vacate her convictions pursuant to CPL 440.10 (1) (i) and (6). On July 11, 2011, defense counsel submitted a motion to vacate three of defendant’s prior convictions. Although one of the convictions was before another judge, this court agreed to hear all three motions in the interest of judicial economy.
Upon reviewing defendant’s moving papers, the court determined that defendant’s application appeared to have merit.[2] With the consent of defense counsel, the court contacted the Office of the District Attorney and asked the People to consider consenting to defendant’s motion. After careful consideration of the facts unique to defendant, the People did agree that defendant’s motion to vacate her convictions should be granted.[3]
Findings of Fact
The People having consented to defendant’s motion, the court accepts as true the following facts set out in defendant’s moving papers:
Defendant was born on December 18, 1988. On September 13, 2006, September 17, 2006 and October 8, 2006, she was convicted of loitering for the purpose of engaging in prostitution (Penal Law § 240.37). At the time of these convictions, she was only 17 years old and working for D.B. Although defendant gave her correct age the first time she was arrested, on her second and third arrests, she told the police she was 18 and 19., respectively. D.B. furnished defendant with false identification and instructed her not to acknowledge his existence if arrested.
*239 Besides prostituting her and taking all the proceeds, D.B. used physical violence, degradation and other coercive tactics to control defendant. Prior to working for D.B., defendant was in a series of other abusive, violent relationships in which she was prostituted by different traffickers. This pattern began soon after defendant ran away from home at 13.
After defendant’s 2006 Bronx arrests, D.B. left New York and prostituted defendant in Washington, D.C., Virginia and Florida. While in Washington, D.C., defendant was gang raped and assaulted but D.B. would not allow her to go to the hospital because he did not want to draw attention to the fact that she was a prostitute. When defendant told D.B. that she wanted to return to her family in New York, D.B. forced defendant to have his nickname tattooed on her forearm so that even if she left, everyone would know she belonged to him.
In early 2008, defendant finally was able to break the cycle of violence and abuse and escape from D.B.[4] Since then, she has relocated from New York to another state. Defendant has been employed in the food service industry for over nine months and is enrolled in a training program to become a medical assistant. Defendant now resides with her young daughter and is working on establishing a positive relationship with her older child, who lives with defendant’s mother.
In 2010, defendant voluntarily provided information regarding D.B. and other aspects of prostitution to law enforcement in New York County. An affidavit from a New York County Assistant District Attorney attesting to defendant’s cooperation is attached to her moving papers.
The Law
In the last decade, both the federal and New York State legislatures have adopted laws designed to address the growing phenomenon of sex trafficking of minors.[5] Thus, in 2000, Congress enacted the Trafficking Victims Protection Act (TVPA) *240 (22 USC § 7101 et seq.). Although the TVPA prohibits all forms of sex trafficking, it imposes greater penalties where a child under 18 is induced to perform a commercial sex act (22 USC § 7102 [8] [A]).
On June 23, 2008, the New York State Legislature passed the Safe Harbour for Exploited Children Act (L 2008, ch 569, codified at Family Ct Act §§ 311.4, 712 [a]; § 732 [a]; Social Services Law §§ 447-a, 447-b). The law seeks to provide support and services to youths who are victims of sexual exploitation. (Assembly Mem in Support, Bill Jacket, L 2008, ch 569, at 13.) In 2010, the Legislature amended CPL 440.10 to add a provision allowing a judgment to be vacated where defendant was arrested for loitering for the purposes of prostitution or engaging in prostitution and defendant’s participation in the offense was a result of sex trafficking under Penal Law § 230.34 or the TVPA (CPL 440.10 [1] [i]).
As counsel correctly observes in her memorandum of law, “[t]he cumulative effect of New York and Federal law in this area is a strong expression that those engaging in prostitution, or commercial sex, under the age of eighteen are to be viewed as victims of trafficking, rather than perpetrators of crime.” The People concur in the court’s determination that defendant is precisely the type of victim intended to be protected under both state and federal law. At oral argument, Assistant District Attorney Abodeely made the following record:
“The People have had the opportunity to review the defendant’s 440 motion and to speak with [defendant] at great length, and review supporting documentation corroborating [defendant’s] assertions.
“We appreciate Miss Mogulescu’s assistance in facilitating those meetings. While every motion of this type is viewed on it’s own merit, we are confident that [defendant] has been forthcoming with us in all aspects of her personal history that *241 she was, indeed, the victim of human trafficking dating back to a young age, and that in spite of a very challenging set of circumstances, and in some instance grave danger, she has fought diligently, and successfully to overcome those challenges to educate herself, and to be a strong and committed mother to her young child.
“Again, each case is viewed on its own merit; as such, the People are exercising our discretion, under the exceptional circumstances presented in this one, each of the convictions for which [defendant] seeks relief are crimes covered by CPL 440.10.
“In light of the foregoing, the People do not oppose defendant’s motion. Rather we ask that this Court grant it, and we wish [defendant] all the best going forward.”
The court agrees with the People’s assessment. The horror of defendant’s sexual exploitation and physical abuse when she was a minor is detailed exhaustively in counsel’s moving papers. D.B.’s role in defendant’s subjugation is not disputed, nor is defendant’s voluntary cooperation with the prosecution. The purposes of New York’s law against sex trafficking are well served by relieving defendant of the stigma and negative consequences of a criminal history. The court, with the consent of the People, accordingly grants defendant’s motion to vacate the judgments on docket numbers 2006BX048415, 2006BX049106 and 2006BX053091 and to dismiss and seal all records of those dockets.

. At the time of its oral decision, the court commended defense counsel for submitting a remarkably persuasive set of moving papers. The court also expressed its appreciation for the District Attorney’s willingness to consent to defendant’s motion upon determining that defendant’s particular circumstances warranted relief under the law.

. As a consequence of granting defendant’s motion, the records of defendant’s prior convictions were sealed (CPL 160.50 [3] [f]). The parties agreed, however, that one copy of the court’s minutes would be retained by the court solely for purposes of preparing this written decision.

. D.B. was subsequently arrested and prosecuted by the United States Attorney’s Office, for the Southern District of Florida. In 2008, D.B. pleaded guilty to Social Security fraud (42 USC § 408 [a] [7] [B]) and aggravated identity theft (18 USC § 1028 [a] [1]). The presentence report submitted to the federal court by the government documented D.B.’s extensive activities as a pimp.

. A thorough discussion of the legislative history of both the federal and New York State laws addressing sex trafficking and the interplay between them is set out in People v G.M. (32 Misc 3d 274 [Crim Ct, Queens County, *240 2011, Serita, J.]). (See also People v Gonzalez, 32 Misc 3d 831 [Crim Ct, NY County 2011, Kotler, J.]; Matter of Bobby P., 28 Misc 3d 959, 966-969 [Fam Ct, Queens County 2010, Hunt, J.].) According to the New York Law Journal, Judge Serita’s decision was the first to apply the provisions of CPL 440.10 (1) (i). (See Keshner, Prostitution Conviction is Vacated Under New Law, NYLJ, May 9, 2011.) The defendant in that case was not a United States citizen. The New York Daily News reported on September 22, 2011, that the instant case is the first in which a United States citizen obtained relief pursuant to CPL 440.10 (1) (i). (See Deutsch, Women Forced into Sex Trade Has Prostitution Convictions Thrown Out under New Sex-Trafficking Law.)